68 F.3d 480
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kelbi FOLKERSON, Plaintiff-Appellant,
v.
CIRCUS CIRCUS ENTERPRISES, INC., dba Circus Circus Hotel &
Casino, Defendant-Appellee.
 No. 93-17158.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1995.
Decided Oct. 16, 1995.
 
 Before: SCHROEDER, NOONAN*, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiff Kelbi Folkerson filed a Title VII sex discrimination suit alleging retaliatory discharge for engaging in protected opposition to illegal sex discrimination. Folkerson appeals from a district court award of summary judgment to Circus Circus on the ground that Folkerson was an independent contractor. We conclude that genuine issues of material fact remain with respect to whether Circus Circus exercised a degree of control adequate to be considered an employer. A genuine issue of material fact also remains on the issue of whether Folkerson engaged in protected oppositional conduct. Therefore, we reverse the summary judgment and remand for further proceedings.
 
 
 3
 Kelbi Folkerson works as a mime. In the late 1970's, Folkerson developed the "Living Doll" act, in which she mimes a mechanical doll. In the ensuing years, she was hired to perform the act at department stores, private parties, conventions and benefits for children. She occasionally changed costumes but continued to mime as a doll.
 
 
 4
 On March 29, 1991, Folkerson auditioned with Circus Circus Enterprises to perform a mechanical wind-up doll mime as a strolling entertainer at the Circus Circus hotel and casino complex in Las Vegas. Circus Circus hired Folkerson to work for an indefinite period beginning on April 8, 1991. Folkerson signed a contract, entitled "Artist Engagement Agreement," in which she agreed to perform as a strolling entertainer six days per week for the weekly sum of $650. The contract required two weeks notice of termination by either party.
 
 
 5
 The contract contained additional provisions. Circus Circus had the right to "film and photograph [Folkerson] for publicity and advertising purposes without additional compensation" and to "use [Folkerson's] name and said photographs and film without further permission." Folkerson agreed to "release[] any and all of [her] rights to such publicity, pictures, promotion, etc." Under the contract, Circus Circus was not obligated to compensate Folkerson unless she appeared in scheduled performances. Folkerson also agreed to purchase and keep in force a $500,000 comprehensive general liability insurance policy. This provision of the contract was not enforced. Folkerson also was responsible for paying all tax obligations.
 
 
 6
 Kelbi Folkerson began to work from 10:00 a.m. until 6:00 p.m. at the Circus Circus complex. Although Circus Circus hired Folkerson to perform her act, the company soon required that she work in the front desk area assisting guests who were checking into or out of the hotel from 10:00 a.m. until 12:00 p.m. Circus Circus gave the strolling entertainers simple written instructions to follow while working in this area, including: explain the express check out box, advise guests of room availability and alternative accommodations, and advise guests to check baggage at the bell desk.
 
 
 7
 In addition to regular work in the front desk area, Folkerson worked in a nonperformance role on at least one other occasion. At one point, Circus Circus required that teenagers enter at a designated entrance in response to concerns about gang activity. Folkerson worked for approximately one month from 7:00 p.m. to 11:00 p.m., directing teenagers to the appropriate entrance.
 
 
 8
 During her standard daily work hours, Folkerson performed the mechanical doll mime from 12:00 p.m. until 6:00 p.m. Circus Circus instructed her and other performers to work in the main towers, particularly outside two different restaurants and a buffet area where people occasionally waited in long lines. The strolling entertainers were told to avoid the casino. Other than requiring performers to present their acts in a professional manner, Circus Circus neither instructed Folkerson on how to perform nor directly supervised her performance.
 
 
 9
 Because Folkerson was miming as a mechanical wind-up doll, she wore on her back a large key, which patrons frequently tried to grab. Circus Circus made Folkerson a sign stating, "Stop Do Not Touch," which she also wore on her back.
 
 
 10
 While Folkerson was performing on November 21, 1991, a patron approached and asked whether she was real. An employee at a nearby rental car booth repeatedly warned the patron not to touch Folkerson. He responded, "I'll prove one way or the other if she's real or not." The patron moved toward Folkerson with open, extended arms, as though he planned to hug her. He touched her in the shoulder area, whereupon Folkerson, remaining in character all the while, reached up and hit the patron in the mouth.
 
 
 11
 During the evening of the same day, Mike Hartzell, Circus Circus entertainment director, viewed a videotape of the incident and decided that Folkerson did not have adequate provocation to hit the patron. Hartzell fired Folkerson the next day, without the two weeks notice required in the contract.
 
 
 12
 After receiving a right to sue letter from the E.E.O.C., Folkerson filed a Title VII sex discrimination lawsuit. The district court granted Circus Circus's motion for summary judgment on the basis that Folkerson was an independent contractor not protected by Title VII. Folkerson appeals the district court judgment.
 
 
 13
 We review a grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Viewing the evidence in the light most favorable to Folkerson, the nonmoving party, we must determine whether there are genuine issues of material fact and whether the district court correctly applied the substantive law. Id.
 
 
 14
 I. IS FOLKERSON AN EMPLOYEE, RATHER THAN AN INDEPENDENT CONTRACTOR, FOR PURPOSES OF TITLE VII?
 
 A. The Appropriate Criteria to Apply
 
 15
 Title VII protects employees but does not apply to independent contractors. See Lutcher v. Musicians Local 47, 633 F.2d 880, 883 (9th Cir. 1980). In a circular fashion, Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. Sec. 2000e(f). We have developed a hybrid approach to distinguish between employees and independent contractors, evaluating both the "economic realities" and the extent to which the employer "controls the means and manner of the worker's performance." Lutcher, 633 F.2d at 883.
 
 
 16
 Since we developed this hybrid approach, the Supreme Court interpreted a definition of "employee" in ERISA identical to that found in Title VII. See Nationwide Mutual Insurance Co. v. Darden, 112 S. Ct. 1344 (1992). The Court concluded that when Congress provides no more than a nominal definition courts must apply common-law agency principles to determine whether a worker qualifies as an "employee." Id. at 1348. The common-law agency approach is designed to determine whether the hiring party controls the means and manner by which work is accomplished. Id. Several factors are relevant to this inquiry.
 
 
 17
 We conclude that the common-law agency approach discussed in Darden is in practice largely indistinguishable from the hybrid approach we had already established. We have previously concluded that, under either Darden or the hybrid approach, a group of workers were employees under the Occupational Safety and Health Act. Loomis Cabinet Co. v. O.S.H.R.C., 20 F.3d 938, 942 (9th Cir. 1994). Moreover, two of our sister circuits have expressly concluded that the two approaches are substantially the same. See Wilde v. County of Kandiyohi, 15 F.3d 103, 106 (8th Cir. 1993); Frankel v. Bally, Inc., 987 F.2d 86, 90 (2nd Cir. 1993). Each approach employs a nonexhaustive list of factors designed to determine whether the hiring party controls the work environment. Frankel, 987 F.2d at 90. Consideration of economic factors does not broaden the common law agency test. Wilde, 15 F.3d at 106. Indeed, the Supreme Court recognized that the common law agency approach includes economic factors. See Darden, 112 S.Ct. at 1348 (including in the common law agency test economic factors such as provision of employee benefits and employee tax treatment).
 
 
 18
 Because the hybrid and common law agency approaches are virtually the same, we analyze Folkerson's status with reference to the common-law agency principles set forth in Darden.
 
 
 19
 B. Application of the Common Law Agency Principles
 
 
 20
 The Supreme Court listed the following common-law agency factors to determine whether the hiring party controls the manner and means by which work is accomplished: the level of skill required; the source of necessary instrumentalities and tools; the location of the work; the duration of the relationship between the parties; the hiring party's right to assign additional projects to the worker; the extent of the worker's discretion over when and how long to work; the method of payment; whether the hiring party is in business; whether the work is part of the hiring party's regular business; whether the hiring party provides the worker with benefits; and whether the hiring party deducts the worker's employment-related taxes. Darden, 112 S. Ct. at 1348 (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989)).
 
 
 21
 Considering these factors in totality, we conclude genuine issues of material fact exist respecting whether Folkerson was an "employee." Some factors tend to indicate Folkerson's independent status. Circus Circus hired Folkerson to perform an act she had developed many years earlier. Folkerson provided her own costume. Circus Circus neither trained Folkerson nor directly supervised her daily performance.
 
 
 22
 Nonetheless, other information of record indicates Circus Circus exercised overarching control of Folkerson's work. Circus Circus assigned Folkerson work responsibilities unrelated to her entertainer role. The company required Folkerson to spend twenty-five percent of her work day assisting customers at the front desk. She also spent four hours a day for approximately one month directing teenage customers to a designated entrance.
 
 
 23
 In addition, Folkerson had little discretion over when, how long, or where to work. She worked full-time from 10:00 a.m. to 6:00 p.m., six days per week. Full time employment is an indicia of an employee relationship. Restatement Sec. 220, cmt. h. Circus Circus required Folkerson to work in set areas of the hotel, primarily outside restaurants where customers often waited in line. Moreover, Folkerson was paid by the week, rather than by the job, a payment method which also indicates "employee" status. See Restatement Sec. 220, cmt. j.
 
 
 24
 Circus Circus also had control over Folkerson's act. Folkerson was restricted to performing as "Kelbi the Living Doll" and could not perform different characters. The entertainment director denied Folkerson's request to perform as an angel during the Christmas season. Because much of the evidence indicates Circus Circus exercised overarching control of Folkerson's work, the district court improperly granted summary judgment on the ground that Folkerson was an independent contractor.
 
 
 25
 II. SUMMARY JUDGMENT IS NOT JUSTIFIED ON THE ALTERNATIVE GROUND THAT FOLKERSON WAS ENGAGING IN UNPROTECTED OPPOSITIONAL CONDUCT WHEN SHE HIT THE PATRON
 
 
 26
 We may affirm a district court's grant of summary judgment on any basis supported by the record. USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1279 (9th Cir. 1994). Circus Circus urges us to affirm the award of summary judgment on the ground that the act of striking a customer was not protected opposition to sex discrimination under Title VII.
 
 
 27
 Title VII prohibits retaliation against employees who oppose sex discrimination:
 
 
 28
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter ....
 
 
 29
 42 U.S.C. Sec. 2000e-3(a). To succeed on a retaliation claim, Folkerson must first establish a prima facie case by demonstrating (1) that she was engaging in protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision. Trent v. Valley Elec. Ass'n, Inc., 41 F.3d 524, 526 (9th Cir. 1994). If Folkerson establishes a prima facie case, the burden shifts to Circus Circus to articulate a legitimate, nondiscriminatory reason for the adverse employment conduct. E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983).
 
 
 30
 "Unreasonably hostile or aggressive" oppositional activity may provide a legitimate, nondiscriminatory basis for an employer's actions. Id.; Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1142 (9th Cir. 1981), cert. denied, 455 U.S. 1000 (1982). Oppositional activity is unreasonable if it significantly disrupts the workplace or directly hinders the employee's job performance. Crown Zellerbach, 720 F.2d at 1015. Circus Circus asserts that physical violence can never constitute protected opposition to unlawful discrimination. However, the company provides absolutely no support for this claim. In its more severe forms, sexual or racial harassment can involve violence. In the criminal law context, the doctrine of self defense has developed precisely because society deems it reasonable for individuals to defend themselves against violent attacks. "It is only just that one who is unlawfully attacked by another, and who has no opportunity to resort to the law for his defense, should be able to take reasonable steps to defend himself from physical harm." 1 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law Sec. 5.7(a) (1986). Because individuals may take reasonable steps to defend against physical harm, employees who do so are not engaging in "unreasonably hostile or aggressive" activity. Reasonable defense against physical violence may be protected oppositional activity.
 
 
 31
 We proceed to evaluate the reasonableness of Folkerson's conduct, viewing the evidence in the light most favorable to Folkerson, the non-moving party. Folkerson was miming a mechanical doll when a man began to come toward her, repeatedly asking whether she was real. An employee at a nearby rental car booth repeatedly told the man not to touch Folkerson. The man refused to listen. Rather, he came toward Folkerson in an aggressive manner with both arms outstretched as though he was going to put his arms around her and squeeze her. He succeeded in touching her shoulder. Not wanting to break out of character, Folkerson raised her arm, in which she held a stuffed animal, to keep the man away. In so doing, she hit him in the mouth. The man laughed and the audience applauded. Based on this evidence, Folkerson's conduct appears proportionate to the degree of threat this man posed. Therefore, we are unable to affirm the award of summary judgment to Circus Circus on the ground that Folkerson did not engage in protected oppositional conduct.
 
 
 32
 The decision of the district court is REVERSED and the cause remanded.
 
 
 
 *
 Judge Noonan was drawn to replace Judge Tang. He has read the briefs, reviewed the record and listened to the tape of oral argument held on April 14, 1995
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3