PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 3/28/96**                     TENTH CIRCUIT

WAYDANN LAMBERTSEN,                          )
                                             )
          Plaintiff-Appellant,               )
                                             )
     v.                                      )      No. 95-4072
                                             )
UTAH DEPARTMENT OF CORRECTIONS,              )
GREG JAQUART, PRESTON KAY, RANDY             )
SOUTHWICK, BILL EAST, RUBIN NUNLEY,          )
CALVIN FOX and LYLE WILDE,                   )
                                             )
          Defendants-Appellees.              )

Appeal from United States District Court
for the District of Utah
(D.C. No. 94-CV-400)

Robert W. Horn, of Robert W. Horn, P.C., of Jackson Hole, Wyoming, for the appellant.

Nancy L. Kemp, Assistant Attorney General, and Jan Graham, Attorney General, of Salt Lake City, Utah, for the appellees.

Before BRISCOE, HOLLOWAY, and MURPHY, Circuit Judges.

BRISCOE, Circuit Judge.

Plaintiff Waydann Lambertsen filed suit against the Utah Department of Corrections and various of its employees, alleging sexual discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000 et seq. Plaintiff also asserted various state law claims against defendants. The district court granted summary judgment

in favor of defendants on plaintiff's Title VII claims, and dismissed the remaining state law claims. Plaintiff appeals.

I.

Plaintiff was hired by the South Sanpete School District (School District) as a teaching assistant at the Central Utah Academy (Academy), a classroom run by the School District for eligible inmates of the Utah State Correctional Facility (Correctional Facility) in Gunnison, Utah. Although administered by the School District, the Academy was physically housed in the Correctional Facility and plaintiff physically worked at the Correctional Facility.

The involvement of defendant Utah Department of Corrections (Department) in the operation of the Academy is limited solely to security and safety concerns. For example, Department employees patrol and coordinate security access in the classroom to ensure the safety of School District employees. Likewise, Department employees review classroom materials and equipment to ensure that they do not pose a security or safety threat. For security purposes, the Department also conducts a background investigation on each new School District employee assigned to work at the Academy. Upon successful completion of the investigation, the School District employee receives a security identification badge that allows entrance into the Correctional Facility. The Department requires each School District employee to sign a written document entitled "Contractor's Code of Conduct,"which sets forth policies that the School District employee agrees to follow in working with inmates at the Correctional Facility.

All other aspects of the operation of the Academy are controlled exclusively by the School District. In particular, the School District exercises exclusive control over

supervision, work assignments, evaluations, pay, and employee benefits for School District employees who work at the Academy. Likewise, the School District provides all funding for the educational services provided by the Academy.

Plaintiff alleges she was sexually assaulted by an inmate while she was working at the Academy. She reported the incident to Robert MacGillivray, who is director of the Academy and is employed by the School District. The Department assigned one of its employees, Preston Kay, to investigate the incident. According to plaintiff, during and following Kay's investigation, Kay and the other individual defendants made numerous sexually suggestive and/or inappropriate comments, which subjected her to a hostile and abusive work environment.

Plaintiff reported defendants' alleged misconduct to MacGillivray, who in turn reported the misconduct to Fred Van Der Veur, warden of the Correctional Facility. MacGillivray placed plaintiff on administrative leave to relieve her from having to work in a hostile environment and to give Van Der Veur an opportunity to address the situation with his staff. At that time, MacGillivray also offered plaintiff a permanent transfer to one of the other schools in the district.

Plaintiff filed a formal charge of discrimination with the Utah Anti-Discrimination Division and the Equal Employment Opportunity Commission, who assumed jurisdiction over the matter and issued a notice of right to sue. Plaintiff subsequently filed this action. Defendants filed a motion to dismiss plaintiff's complaint. The district court issued an order advising the parties that the court intended to treat defendants' motion to dismiss as a motion for summary judgment and inviting the parties to submit additional evidence relevant to the motion.

3

Plaintiff filed a pleading entitled "Memorandum in Traverse of Summary Judgment." Plaintiff also filed a motion to amend her complaint to assert a cause of action against defendants under 42 U.S.C. § 1983. Defendants responded to plaintiff's motion to amend her complaint. The district court issued a written memorandum granting summary judgment in favor of defendants on plaintiff's Title VII claims, but declined to exercise jurisdiction over plaintiff's pendent state law claims. The court issued a separate order denying plaintiff's motion to amend her complaint.

II.

A. Plaintiff's Title VII claims

In granting summary judgment in favor of defendants on plaintiff's Title VII claims, the district court adopted the "hybrid" test, see Oestman v. National Farmers Union Ins. Co., 958 F.2d 303, 305 (10th Cir. 1992) ("hybrid" test applied to determine whether insurance agent an "employee" within meaning of Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.), to determine whether plaintiff was an "employee" of the Department. The court concluded:

> As plaintiff notes, the critical feature which defines the employer-employee relationship between plaintiff and defendant Utah Department of Corrections ("DOC") is control. It is undisputed that DOC conducted a security check of plaintiff as a condition of her entry into the prison facility and that DOC was responsible for security in the prison classroom. To the extent plaintiff was subject to security measures within the prison grounds, she was subject to control by DOC. However, the undisputed facts also reflect the following: (1) Plaintiff was hired by the School District; (2) The School District paid her salary and benefits; (3) Work assignments, hours of work and performance evaluations were established and governed by the School District; (4) Plaintiff's supervisor at the Gunnison Academy was an employee of the School District; (5) The "Contractor's Code of Conduct" plaintiff was required to sign by DOC sets forth behavior of "independent contractor[s]" while operating within the prison grounds. In sum, the court finds that the facts reflect that while DOC controlled prison security, the School District controlled the hiring, firing, wages and benefits of school

4

employees who were assigned to the prison school. Although DOC exercised some control over plaintiff for security purposes when she was within the confines of the prison, ultimate control over her employment was exercised by the School District. The court, therefore, concludes that DOC was not plaintiff's employer for purposes of Title VII.

Appellant's br. append., Memorandum Decision at 8.

On appeal, plaintiff contends the district court erred in concluding she was not an employee of the Department for purposes of Title VII. Specifically, plaintiff argues the court's legal conclusions were based upon disputed facts and that summary judgment was inappropriate in light of the disputed facts. Further, plaintiff argues the district court misconstrued the "means and manner" of control exerted by the Department over her work. Plaintiff also argues the court failed to consider the "totality of the circumstances" in determining whether she was an employee of the Department. Finally, plaintiff argues the court erred in failing to apply the test espoused in McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933-34 (11th Cir. 1987), for determining whether the School District and the Department could be considered a single employer for Title VII purposes.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court under Fed. R. Civ. P. 56(c). Universal Money Centers. v. American Tel. & Tel. Co., 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S.Ct. 655 (1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Id. If there is no genuine issue of material fact in dispute, we must determine whether the district court correctly applied the law. Applied

5

Genetics Intern. v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

Title VII provides, in pertinent part, that it is "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). An employer under Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees," 42 U.S.C. § 2000e(b), and an employee is "an individual employed by an employer." 42 U.S.C. § 2000e(f).

In determining whether a plaintiff has demonstrated an employee-employer relationship for purposes of federal anti-discrimination legislation, courts have generally applied either the economic realities test or the hybrid test. Oestman, 958 F.2d at 305 (discussing both tests). Under the hybrid test, the main focus of the court's inquiry is the employer's right to control the "means and manner" of the worker's performance. Id. However, the hybrid test also looks at other factors, including: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the

6

intention of the parties.  Id.[1]  No single factor is conclusive.  Rather, the courts are to look at the totality of circumstances surrounding the working relationship between the parties. Id.

Although the Supreme Court has not interpreted the "employer" or "employee" provisions of Title VII, the Court has interpreted a definition of "employee" in ERISA identical to that found in Title VII.  Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992).  In Darden, the Court concluded that when Congress provides no more than a nominal definition, courts must apply common-law agency principles to determine whether a worker qualifies as an employee.  Id. at 323.  Under the common-law agency approach, although no one factor is decisive, the primary focus is whether the hiring party controls the means and manner by which work is accomplished.  Id.  To date, at least three circuits have concluded that "the common-law agency approach discussed in Darden is in practice largely indistinguishable from the hybrid approach" typically utilized in Title VII cases.  Folkerson v. Circus Circus Enterprises, No. 93-17158, 1995 WL 608432 at *3 (9th Cir. 1995); Wilde v. County of Kandiyohi, 15 F.3d 103, 106 (8th Cir. 1994) ("We see no significant difference between the hybrid test and the common-law test."); Frankel v. Bally, 987 F.2d 86, 90 (2d Cir. 1993).

We agree with the Second, Eighth, and Ninth Circuits that there "is little discernible difference between the hybrid [approach] and the common law agency [approach]." Frankel, 987 F.2d at 90.  Both approaches emphasize the right of the hiring party to control the means and manner by which the work is accomplished, but allow

---

[1] We note the focus of the test as applied in the typical case is to determine whether the plaintiff is an employee or an independent contractor.  Here, the test was applied to determine which of two entities was plaintiff's employer.

consideration of other factors as well. Id. In particular, both approaches allow for consideration of economic factors in appropriate circumstances. Id.; Wilde, 15 F.3d at 106. Accordingly, we conclude it was proper for the district court to apply the hybrid approach for purposes of determining whether the Department was plaintiff's employer under Title VII.

We further conclude the district court correctly found that the Department was not plaintiff's employer. Although the Department physically controlled plaintiff's entry into the Correctional Facility and provided security for plaintiff and other employees of the Academy, the uncontroverted evidence indicates that plaintiff's employer was the School District. Most notably, there is simply no evidence in the record from which a finder of fact could conclude the Department controlled the means or the manner in which plaintiff performed her day-to-day work. Rather, the uncontroverted evidence makes clear that the major terms of plaintiff's employment (e.g., work assignments, pay, etc.) were controlled solely by the School District.

As for plaintiff's assertion that the School District and the Department should be considered a single employer for Title VII purposes, we note that plaintiff did not argue this theory before the district court and is precluded from asserting it on appeal. See, e.g., In re Walker, 959 F.2d 894, 896 (10th Cir. 1992) (as a general rule, appellate court will not consider issues on appeal not raised before district court). Even ignoring this procedural bar, we find no merit to plaintiff's argument. To date, the single employer theory espoused by the Eleventh Circuit in McKenzie, 834 F.2d at 933-34, has not been expressly adopted in this circuit. See Evans v. McDonald's Corp., 936 F.2d 1087, 1090 (10th Cir. 1991) ("We need not decide whether to adopt the reasoning of McKenzie and

8

like cases, because [plaintiff] cannot sustain a cause of action even under the theory she advances."). Even assuming, for purposes of argument, that the single employer theory is viable in this circuit, plaintiff has failed to present evidence demonstrating that the School District and the Department were a single employer.

Under the single employer test, the court evaluates four factors to determine whether two entities are so interrelated that it is appropriate to consider them one employer under Title VII. The factors are: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. Armbruster v. Quinn, 711 F.2d 1332, 1337 (6th Cir. 1983). Of these, centralized control over labor relations is the most important factor. Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983). Here, there is simply no evidence to satisfy any of the first three factors. Most notably, there is no evidence that would allow a factfinder to conclude there was centralized control of labor relations between the School District and the Department.

B. Denial of plaintiff's motion to amend complaint

The district court denied plaintiff's motion to amend her complaint "for the reasons outlined by defendants in their responsive pleading." On appeal, plaintiff claims the court abused its discretion in denying her motion to amend.

Rule 15(a), which governs the amendment of pleadings, provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's

9

pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

The denial of a motion to amend a complaint is reviewed for an abuse of discretion. Long v. United States, 972 F.2d 1174, 1183 (10th Cir. 1992). Although a district court should normally set forth its reasons for exercising its discretion and denying a motion to amend, the court's failure to do so is harmless when the record contains an apparent reason justifying the denial of a motion to amend. Id. In addition, we are "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." United States v. Sandoval, 29 F.3d 537, 542 n. 6 (10th Cir. 1994).

Reviewing the record, we conclude there are several apparent reasons justifying the denial of plaintiff's motion to amend. The motion to amend was filed far beyond the permissive period set forth in Rule 15(a). Here, the motion to amend was filed eight months after defendants filed their motion to dismiss. Moreover, plaintiff failed to provide an adequate explanation for her delay in seeking the amendment. See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (holding that untimeliness in itself can be a sufficient reason to deny leave to amend). Plaintiff apparently did not file a copy of her proposed amended complaint with her motion for leave to amend, as required by the local rules of the district court. As the district court was not provided with a copy of the proposed amended complaint, it would have been impossible for the court to determine its viability. We conclude that the district court did not abuse its discretion in denying plaintiff's motion to amend.

C. Eleventh Amendment immunity

Plaintiff questions whether the Department and the individual defendants in their official capacities have immunity under the Eleventh Amendment for claims brought under Title VII. We do not address this question because it is based upon a misreading of the district court's memorandum. The district court dismissed plaintiff's Title VII claims solely because plaintiff could not demonstrate that she had an employer-employee relationship with the Department. Although the court briefly discussed the question of Eleventh Amendment immunity, that discussion applied only to plaintiff's pendent state law claims.[2]

III.

The judgment of the district court is AFFIRMED.

---

[2] Plaintiff does not specifically challenge on appeal the dismissal of her pendent state law claims. Counsel stated at oral argument that plaintiff is presently pursuing these claims in state court.