Josephine V. AGUIRRE, Plaintiff,

v.

McCAW RCC COMMUNICATIONS, INC., et al., Defendants.

No. 95–2439–JWL.

United States District Court,
D. Kansas.

Jan. 23, 1997.

Jeffrey S. Bay, Clark S. Gay, Van Osdol, Magruder, Erickson & Redmond, Kansas City, MO, for plaintiff.

Larry W. Joye, Paul A. Feuerborn, Morrison & Hecker L.L.P., Kansas City, MO, for Airtouch Cellular of Kansas, Airtouch of Texas, Airtouch Paging of California, Gensub Inc., McCaw California Partners Limited Partnership, MFC Inc., Midwest Cellular Telephone Company.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This employment discrimination case comes before the court on the defendants' motion (Doc. # 47) for summary judgment pursuant to Fed.R.Civ.Pro. 56. In her complaint, the plaintiff asserts that the defendants discriminated against her based on her gender and her national origin in violation of Title VII of the Federal Civil Rights Act (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Kansas Act Against Discrimination (KAAD), K.S.A. § 44–1001 *et seq.*, when they denied her a Cellular One dealership.[1] The defendants argue, among other things, that the plaintiff's discrimination claims fail because Cellular One dealers are not employees of Cellular One within the meaning of Title VII. For the reasons discussed below, the court grants the defendants' motion for summary judgment.

### II. Facts.

The following facts are either uncontroverted or, if controverted, construed for the purposes of resolving this motion in the light most favorable to the plaintiff. Defendant CMT Partners d/b/a Cellular One (Cellular One)[2] is engaged in the business of providing wireless telecommunications services in the Kansas City area. Part of Cellular One's marketing structure in the Kansas City area consists of a network of dealers which market Cellular One's wireless telecommunications service, sells Cellular One's service to subscribers on a commission basis, and sells, installs, and maintains cellular phones and related equipment. The terms of the relationship between Cellular One and its dealers are set forth in a Dealer Agreement. Section 2.4 of the Dealer Agreement provides, in pertinent part,

> Company [Cellular One] and Dealer acknowledge that their relationship is that of independent contracting parties and this Agreement does not create a general agency, joint venture, partnership, employment relationship or franchise between them. Dealer shall be responsible for the cost and expenses of conducting its business and shall have the right to operate its business as it sees fit, including, without limitation, the right to establish the pricing, terms and conditions of its sale of Equipment.

*Defendant's motion,* Exhibit B. Thus, the Dealer Agreement provides that the dealers have complete control over the price of the necessary equipment, such as the cellular phones, and that Cellular One provides the wireless telecommunications service at a rate it controls. The Dealer Agreement further provides that Cellular One compensates its dealers on a commission basis and that Cellular One treats its dealers as independent contractors for tax purposes. Cellular One does not have an ownership interest in any of its dealers. Cellular One dealers and their subdealers establish their own hours, schedules, and locations as well as independently prospect for and sell to subscribers.

From 1991 to 1994, the plaintiff was a subdealer for Cellular Systems, Inc., an authorized Cellular One dealer. As a subdeal-

---

1. In the Pretrial Order, the plaintiff also asserted that the defendants discriminated against her based on her gender and national origin when they required her to sign a non-compete agreement in order to continue her employment. The defendants challenged this claim in their summary judgment papers and the plaintiff did not respond. As a result, the court deems that claim to be waived and dismisses it with prejudice.

2. Cellular One is a general partnership consisting of Airtouch Cellular, Airtouch of Texas, Airtouch Paging of California, Gensub, Inc., McCaw Partnership, MFC, Inc., and Midwest Cellular Telephone Company. Cellular One and its partners are the only remaining defendants in this matter.

er, the plaintiff sold cellular services on a commission basis.

In late December of 1994, the plaintiff asked Mr. Gregg Humphreys, Cellular One's Indirect Sales Manager, about obtaining her own Cellular One dealership. Pursuant to Cellular One's company policy, Mr. Humphreys asked the plaintiff to submit a business plan and a financial statement to him. The plaintiff submitted a financial statement and a business plan, proposing to call her Cellular One dealership "Aguirre & Associates." Cellular One denied the plaintiff's application and, as a result of its denial, the plaintiff filed this lawsuit alleging gender and national origin discrimination.

In her deposition, the plaintiff admits knowing and understanding before she applied for a Cellular One dealership that if she were granted a Cellular One dealership, Aguirre & Associates would not be a Cellular One employee. *Defendant's motion,* Exhibit D at 52, 164–66, 202–05. The plaintiff further acknowledged that Aguirre & Associates would have been an independent contractor and a sole proprietorship. *Id.*

### III. Summary judgment standard.

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive. determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion.[3]

In a previous order dated April 26, 1996, the court denied defendant Cellular Systems, Inc.'s motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *Aguirre v. McCaw RCC Communications, Inc.,* 923 F.Supp. 1431 (D.Kan.1996). In that order, the court stated,

> In her complaint, the plaintiff alleges that CSI discriminated against her on the basis of sex and national origin in failing to grant her a cellular dealership. Neither the plaintiff nor CSI describe whether such a dealership is an additional benefit associated with the plaintiff's current job or whether the dealership is a separate position which the plaintiff seeks to attain. Assuming that the plaintiff is presenting a failure-to-hire or failure-to-promote claim, the plaintiff does not have to be an employee of the defendant to state a cause of action under the plain language of the statute. After all, Title VII allows any "individual" to bring a discrimination claim against "an employer" who fails or refuses to hire that individual on the basis of her sex or national origin. To state a claim, the defendant must meet the statutory definition of "employer" under Title VII by having at least fifteen employees. 42 U.S.C. § 2000e(b). The present employer-

---

3. Because Kansas courts have applied Title VII's standards to KAAD claims, the court will utilize the Title VII standard to determine whether an employment relationship exists between Cellular One and its dealers for KAAD purposes. *Best v. State Farm Mut. Auto. Ins. Co.,* 953 F.2d 1477, 1480 n. 2 (10th Cir.1991).

employee relationship between the plaintiff and the defendant is irrelevant.

*Aguirre,* 923 F.Supp. at 1435 (internal footnote omitted). Implicit in the court's reasoning was that, although a plaintiff with a failure to hire or promote cause of action need not show a current employment relationship as a prerequisite to a Title VII suit, the plaintiff must demonstrate that he or she is seeking to create an employment relationship within the meaning of Title VII. *See Carlton v. City of Topeka, Kan.,* No. 91–2273, 1993 WL 32780 at *1 (D.Kan., Jan. 21, 1993). Therefore, in order to proceed with her Title VII cause of action, the plaintiff must demonstrate that a Cellular One dealer, the position she sought, has an employment relationship with Cellular One within the meaning of Title VII. *Id.*

The defendants argue that the plaintiff's discrimination cause of action does not fall within the scope of Title VII because Cellular One dealers, which the plaintiff sought to be, are independent contractors, not Cellular One employees. In response, the plaintiff argues (1) that her discrimination claims are within the scope of Title VII because Cellular One controlled the plaintiff's access to obtaining a dealership and interfered with her prospective employment opportunities as a Cellular One dealer and (2) that a Cellular One dealership is an employment position within the meaning of Title VII because Cellular One exercises and maintains meaningful control over the means and manner of the performance of its dealers.

■ The Tenth Circuit has not had occasion to address directly the issue of whether Title VII liability should be extended to situations where the defendant and the plaintiff do not have a direct employment relationship but the defendant controls the plaintiff's access to employment opportunities and denies that access based on unlawful criteria. However, the parties cite numerous decisions outside the Tenth Circuit that do address this issue. The court takes particular note of the Seventh Circuit's recent opinion on this issue, *Alexander v. Rush North Shore Medical Center,* 101 F.3d 487 (7th Cir.1996). In overruling its previous decision in *Doe v. St. Joseph's Hosp. of Fort Wayne,* 788 F.2d 411

(7th Cir.1986), one of the cases relied on by the plaintiff here, the *Alexander* court retreated from *Doe's* extension of Title VII liability based on the defendant's control of a non-employee's access to employment and held that a Title VII plaintiff must prove the existence of an employment relationship in order to maintain a cause of action under Title VII. *Alexander,* 101 F.3d at 491–92. *Alexander* cited as inconsistent with *Doe* two post-*Doe* Seventh Circuit cases in which the court held, without applying the *Doe* test, that interfering with an independent contractor's present and potential business opportunities with a client and interfering with an independent contractor's economic possibilities with a customer were insufficient to bring the plaintiff's claims within the ambit of Title VII protection because Title VII does not protect independent contractors. *Id.* at 492 (citing *Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377 (7th Cir.1991); *Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435 (7th Cir.1996)). The *Alexander* court went on to conclude that in order to demonstrate an employment relationship sufficient to bring the plaintiff within the ambit of Title VII's protection, a plaintiff must show an employment relationship based upon a common law employee/independent contractor framework. *Id.* at 492.

The court believes that the Tenth Circuit would approach this issue in a manner similar to the way in which it is approached in the *Alexander* decision and the cases on which *Alexander* relies. Albeit without expressly rejecting other possible alternative tests, the Tenth Circuit appears to have made a definitive choice to determine the bounds of Title VII by examining whether an employer-employee relationship exists between a plaintiff and a defendant. *See Lambertsen v. Utah Dep't of Corrections,* 79 F.3d 1024 (10th Cir.1996). In *Lambertsen,* the court looked directly to the statutory language defining employer and employee to guide it to the threshold consideration, that is, whether an employer-employee relationship exists such that the conduct in question falls under federal anti-discrimination legislation. *Id.* at 1027–28. Moreover, the *Lambertsen* court went on to determine whether

that relationship existed by applying a test closely related to the common law one relied on by the Seventh Circuit in *Alexander. Id.* Thus, it would appear that the Tenth Circuit would find a *Doe* approach as inconsistent with its pronouncements on the subject as the Seventh Circuit did in *Alexander.* The court concludes, as a result, that the plaintiff must demonstrate that her applying for a Cellular One dealership constitutes seeking an employment rather than an independent contractor relationship with Cellular One before she can proceed with her Title VII cause of action.

In *Lambertsen,* the Tenth Circuit utilized a hybrid test to determine whether an individual is an employee within the meaning of Title VII. 79 F.3d at 1028. Under the hybrid test, described as a combination of common law and economic concepts, "... the main focus of the court's inquiry is the employer's right to control the 'means and manner' of the worker's performance." *Id.* (citing *Oestman v. Nat'l Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.1992)). However, the hybrid test also looks at other, non-exclusive, factors: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision, (2) the skill required in the particular occupation, (3) whether the employer or the employee furnishes the equipment used and the place of work, (4) the length of time the individual has worked, (5) the method of payment, whether by time or by job, (6) the manner in which the work relationship is terminated, (7) whether annual leave is afforded, (8) whether the work is an integral part of the business of the employer, (9) whether the worker accumulates retirement benefits, (10) whether the employer pays social security taxes, and (11) the intention of the parties. *Id.* No single factor is conclusive and a court should look at the totality of the circumstances surrounding the working relationship between the parties. *Id.*

In support of her contention that a dealer is a Cellular One employee under the hybrid test, the plaintiff points to the following evidence: (1) Cellular One approves every single sale of its services by dealers and their subdealers on a daily basis and makes the decision whether to activate Cellular One's service; (2) Cellular One has the right to terminate any subscriber's services; (3) Cellular One sets the commission rates and unilaterally controls the compensation and commission structure of its dealerships and subdealers; (4) Cellular One unilaterally sets the airtime plans, the cost per minute, and the monthly charges; (5) Cellular One controls certain discount promotions; (6) Cellular One controls the location of its dealers; (7) Cellular One has the right to approve and to terminate the subdealers of its dealers; (8) Cellular One requires its dealers to meet and consult with Cellular One to establish mutually agreeable performance goals and marketing strategies; (9) Cellular One requires its dealers to meet sales quotas; (10) Cellular One requires that all of the dealers' sales and service personnel attend training courses concerning the sale of Cellular One's services and equipment; and (11) Cellular One requires its dealers to execute a non-compete agreement. In their reply, the defendants argue that Cellular One's alleged control over its dealers does not rise to the level necessary to create an employment relationship under the hybrid test. Specifically, the defendants argue that the contractual rights Cellular One retains with respect to certain aspects of its dealers' sales activities are in the nature of a supplier-distributor relationship to which Title VII does not apply.

Construing the facts in a light most favorable to the plaintiff, the court concludes that because Cellular One does not control the means and manner of its dealers' performance as required under the hybrid test, there is an absence of evidence from which a reasonable jury could conclude that a Cellular One dealer is a Cellular One employee for Title VII purposes. The court will address each factor of the hybrid test in turn.

The first factor, supervision, superficially seems to present some troublesome issues. Pursuant to the Dealer Agreement, Cellular One does retain the right to approve the dealers' subscribers, to terminate service to a dealers' subscriber, and to approve of or terminate a subdealer of a dealer. In his

uncontroverted affidavit, however, Mr. Humphreys describes the nature of these contractual rights,

> The only basis upon which Cellular One would reject a subscriber application submitted by a dealer is creditworthiness. Even if a credit inquiry indicates that a prospective subscriber is not creditworthy, Cellular One does not reject the application, but instead imposes a deposit requirement. By the same token, the only basis upon which Cellular One terminates service is the failure of a customer to pay for the service or if Cellular One determines that the customer has fraudulently represented his credit history.

*Defendant's Reply,* Exhibit A ¶ 1.

> During the period of time I have been involved in the dealer distribution channel, Cellular One has never rejected a proposed subdealer. Cellular One does not monitor the sales of subdealers and has never during the period of my involvement with the dealer distribution channel caused any subdealer to be terminated or otherwise disciplined due to poor productivity. During this period, the only times Cellular One has ever addressed a subdealer's conduct with a dealer have involved instances or apparent instances of unethical, dishonest or fraudulent conduct, or conduct leading to serious subscriber complaints on the part of the subdealer.

*Id.* at ¶ 5. Based on this uncontroverted evidence, the court concludes that Cellular One exercises its contractual approval and termination rights sparingly and only when necessary to prevent its dealers and their subdealers from tarnishing its name and reputation or to protect itself from financial loss. That is no less than what one might expect in any franchising or other similar relationship and does not give rise to any inference that its dealers are employees of Cellular One.

Cellular One also retains, pursuant to the Dealer Agreement, certain controls over promotions and requires the dealers and their subdealers to attend meetings and training courses. Paragraph two of Mr. Humphreys' uncontroverted affidavit indicates that Cellular One implements periodic sales promotions to market its wireless telecommunications services. This in no way infringes on the dealers right to implement their own promotions, which generally involve the sale of the telephone equipment and accessories over which the dealers have complete control. Thus, Cellular One promotes its wireless telecommunications service generally and the dealers collectively enjoy the benefits of such promotion by signing up subscribers and, presumably, by selling the necessary equipment and accessories to those subscribers.

Paragraph three of Mr. Humphreys' affidavit indicates that the dealer meetings are primarily for the benefit of the dealers. Their participation is voluntary and, to Mr. Humphreys knowledge, no dealer has ever been terminated or otherwise sanctioned for not attending one of these meetings. Thus, the training sessions also appear to be for the benefit of the dealers and their subdealers. Moreover, without any training, the dealers and subdealers would not be competent to sell Cellular One's wireless telecommunications service or sell, install, or service the necessary equipment they sell. Neither party provided evidence indicating what specifically goes on at these meeting and training sessions or how often they occur. As a result, the court is unable to discern, beyond the fact that they exist, the effect of these meetings and training sessions with respect to the issue of the existence of an employment relationship between Cellular One and its dealers and finds no basis to infer that they are indicia of an employment relationship.[4]

It is clear, however, that although Cellular One appears to provide its dealers with the basic skills necessary to promote and sell its wireless telecommunications service along with the necessary equipment, the dealers and their subdealers are essentially unsupervised and uncontrolled in the area of solicitation and sales, which constitutes the vast

---

4. The plaintiff also appears to argue that Cellular One's control over its dealers' commission structures and the airtime plans demonstrates that Cellular One dealers are employees for Title VII purposes. The plaintiff does not explain and the court does not see how these facts are pertinent to any of the hybrid test's factors.

**1228**

majority their work. They make their own hours and solicit whomever they chose. Therefore, the court concludes that the first factor cuts against the recognition of an employment relationship between Cellular One and its dealers.[5]

The third, fifth, seventh, ninth, tenth, and eleventh factors [6] also cut against the recognition of an employment relationship between Cellular One and its dealers. Cellular One dealers and their subdealers furnish their own place of work [7], sell and promote the equipment and accessories independently, and are paid based on commission. Cellular One does not provide or control the annual leave of or pay any social security taxes for its dealers or their subdealers. Cellular One dealers do not accumulate retirement benefits pursuant to their relationship with Cellular One. The unequivocal intent of Cellular One and its dealers, evidenced by the Dealer Agreement and the plaintiff's own deposition testimony, is that their relationship is that of two independent entities contracting at arms length.

The only factor cutting in favor of recognizing an employment relationship between Cellular One and its dealers is number eight. It is clear that the dealers play an integral role in Cellular One's business in the Kansas City area. That factor standing alone, however, does not give rise to an inference of an employment relationship.

Based on the totality of the circumstances surrounding the working relationship between Cellular One and its dealers, the court concludes that the working relationship between Cellular One and its dealers does not constitute that of employer-employee for Title VII purposes and, thus, also for KAAD purposes. *Lambertsen,* 79 F.3d at 1028; *Oestman,* 958 F.2d at 305. As a result, the court concludes that the plaintiff's discrimination claims are not within the scope of Title VII and the KAAD because Congress

and the Kansas Legislature have limited the scope of those statutes to discrimination in the area of employment. 42 U.S.C. § 2000e *et seq.;* K.S.A. § 44–1001 *et seq.* While Congress and the Kansas Legislature might well choose to enact laws which protect against the sort of discrimination alleged here in awarding franchises, distributorships or dealerships to independent contractors, they have not done so by enacting Title VII or the KAAD. Therefore, the court grants the defendants' summary judgment motion. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

**IT IS THEREFORE ORDERED BY THE COURT** that the defendants' motion for summary judgment (Doc. # 47) is granted and that the plaintiff's complaint is dismissed in its entirety and as to all defendants.

**IT IS SO ORDERED.**

---

5. The parties do not discuss or provide evidence concerning the skill required to be a dealer. Thus, the court is unable to substantively address the hybrid test's second factor.

6. Because neither party substantively addresses the fourth and sixth factors, the court will not consider them in its analysis.

7. Pursuant to § 2.6 of the Dealer Agreement, Cellular One dealers are only obligated to give Cellular One notice of their locations. Dealer locations do not require Cellular One approval.