LUCERO, Circuit Judge,
dissenting.
While I agree with most of the majority opinion and find it well-reasoned, I write separately because I respectfully disagree with the majority’s analysis of whether the County was an employer of Bristol. Short of upsetting Colorado’s system of local ■government, we could not uphold a jury finding of fact that plaintiff is an employee of the County. I therefore ultimately conclude that as a matter of law the plaintiff cannot be an employee of the County. We should respect the constitutional scheme that the State of Colorado has created to govern its various counties, and we should not empower a jury to force one state constitutional officer to be responsible for the actions of another.
*1169 I
I agree with the majority that the multi-factor test we developed in Lambertsen v. Utah Department of Corrections, 79 F.3d 1024, 1028 (10th Cir.1996), is the correct starting point for our analysis. I also agree that, as a general rule, “determining whether an entity qualifies as an employer is a fact issue for the jury.” (Majority Op. at 1165.) However, in this particular context the combination of the Lambertsen test with Colorado constitutional and statutory law regarding local government requires a finding that, as a matter of law, the County could not have been plaintiffs employer.
As the majority correctly points out, the “main focus of the court’s inquiry is the employer’s right to control the manner of the worker’s performance.” Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1153 (10th Cir.1999) (quotation omitted). The majority and I agree that the County clearly did not have control over the manner of Bristol’s performance in this case, and the majority acknowledges that the Sheriff had complete control over Bristol’s job performance. But a close examination of Colorado law makes clear just how complete and exclusive the Sheriffs control over his employees is.
The county sheriff is a constitutional office in Colorado, a position that is separate and distinct from the board of county commissioners. See Colo. Const, art. XIV, § 6 (election of county commissioners), § 8 (election of sheriffs and other county officers). Colorado state law explicitly provides that sheriffs have the power to hire and fire employees at will. Colo.Rev.Stat. § 30-10-506. The Colorado Supreme Court has not only held that county sheriffs alone have the power to hire and fire their employees, but also that a sheriff does “not possess the statutory authority to limit his power to discharge [an employee] at his pleasure.” Seeley v. Bd. of County Comm’rs, 791 P.2d 696, 700 (Colo.1990) (en banc) (quotation omitted) (holding that a county sheriff had the power to hire and fire employees at will, despite adoption of a personnel manual that purported to limit that power). Thus, even though the Clear Creek County Sheriffs Department may have voluntarily chosen to have the County Personnel Review Board review all terminations of the Sheriffs employees, under Colorado law the Sheriff could not have restrained his discretion to hire or fire Bristol in this manner. At any time he could have disregarded the Personnel Review Board’s recommendations.
Other Colorado state court cases emphasize the lack of control that a county’s board of county commissioners has over a sheriffs employees and over the employees of other county officials whose independence is protected under Colorado law and the Colorado Constitution. See, e.g., Schroeder v. Bd. of County Comm’rs, 152 Colo. 313, 381 P.2d 820, 822-23 (Colo.1963) (holding that once a board of county commissioners has approved the salary for an employee, it could not have used its budgetary power over the county superintendent of schools to force him to fire that employee, where the superintendent’s power to hire and fire was established by state law); Tunget v. Bd. of County Comm’rs, 992 P.2d 650, 652 (Colo.Ct.App.1999) (holding that the sheriff, not the county or board of commissioners, was liable for injuries resulting from the sheriffs employees’ negligence because “[t]he sheriff, not the county or the Board, has the right of control with respect to the [sheriffs] deputies”).[1]
*1170 Federal district courts have also considered control by a county over a sheriffs employees to be a factor in the context of suits under Title VII of the Civil Rights Act and 42 U.S.C. § 1983. A number of courts have stated that the sheriff can terminate his employees at will, regardless of the existence of a county personnel manual or other actions by a board of county commissioners. See Goodwin v. Debekker, 716 F.Supp. 1363, 1365 (D.Colo.1989) (holding that a sheriff had not limited his discretion to fire an employee through adoption of the county’s personnel policy manual); Jackson v. Johns, 714 F.Supp. 1126, 1130 (D.Colo.1989) (same); see also Harrison v. Bd. of County Comm’rs, 775 F.Supp. 365, 369 (D.Colo.1991) (“Colorado law is clear that a sheriff may revoke the appointment of a deputy sheriff at his or her pleasure.”); Coover v. Summit County, No. 86-F-12, 1986 WL 28915, at *2 (D.Colo. Mar.21, 1986) (holding that a sheriffs employee does not have a property interest in his job because he can be terminated at will by the sheriff, and “[t]his mandate could not be abrogated or restricted at the county level”).[2]
Of the other eleven Lambertsen factors, the majority concludes that eight might be pertinent. (Majority Op. at 1166.) Even though Lambertsen does not prescribe a quantitative analysis, for the purposes of this discussion I do not dispute the majority’s determination that factors five (method of payment), seven (annual leave), nine (accumulation of retirement benefits), and ten (payment of social security taxes) might weigh in favor of finding that the County was the employer of plaintiff. I concur with the majority’s conclusion that it is unclear in which direction factor eleven (the intentions of the parties regarding the employment relationship) points. (Id. at 1167.) I also agree with the majority’s conclusion that factor six (the manner in which the employment relationship is terminated) weighs in favor of finding that the County is not plaintiffs employer because, under Colorado case law, the Sheriffs Department could have ignored any recommendation of reinstatement by the Personnel Review Board. (Id.)
According to the majority’s analysis of factor eight of the Lambertsen test, it is *1171 unclear whether Bristol’s work was “integral to the business of the County” because the Sheriffs Department is involved in law enforcement, which is one of the responsibilities of the County. (Id.) I conclude, however, that it is impossible as a matter of law for this factor to be resolved in favor of plaintiff. There is a significant and essential distinction between the Board’s power to pass laws to be enforced by the Sheriff, a legislative function, and the Sheriffs powers to enforce those laws, an executive function. As the majority notes, the Sheriffs duties are thus no more integral to the business of the Board than the duties of the executive of any government are integral to the business of the legislature. (Id. at 1167.)
I also disagree with the majority’s conclusion that factor three (the provision of equipment and place of work) weighs in favor of finding that the County was plaintiffs employer. The majority argues that because the County provided the jail and the equipment used in the jail by the Sheriff, the County might be considered plaintiffs employer. (Id. at 1166.) But the Board is also responsible for “providing and maintaining adequate courtrooms and other court facilities” for state judicial officers. Colo.Rev.Stat. § 13-3-108. By the same logic, this would mean that the Board might be responsible for the hiring and firing of all judicial employees in Colorado, even though it is the state that funds the courts, and it is the judicial branch itself that establishes salaries, personnel policies, and its own budget. Id. §§ 13 — 3— 104 to 106. I cannot conclude that factor three has any meaningful weight in this context.
The Colorado Constitution and Colorado state law have created a system of independent, separate constitutional county offices, with each office responsible for its own employees. Under the most important element of the Lambertsen test — the right to control a worker’s performance— the evidence is overwhelming that the County had no control at all over Bristol. To my mind, this fact is what matters most. While it is true that no one factor is to be determinative in the Lambertsen analysis, control is the “main focus” of the inquiry, Lambertsen, 79 F.3d at 1028, especially when the other eleven Lambertsen factors are fairly evenly balanced.
Under Colorado law it was impossible for the County to have had control over the Sheriffs decision to fire plaintiff in this case. But a jury finding that the County was the employer of plaintiff would effectively be a finding that the County could have had control over the Sheriffs decision. Such a finding would be counter to Colorado law and would have to be overturned on a motion for judgment as a matter of law. Therefore, I conclude that a proper application of Colorado constitutional and statutory law to the facts of this case would yield a Lambertsen analysis that holds as a matter of law that the County is not an employer of Bristol.
There is an additional way in which a jury finding in favor of plaintiff and against the County woüld undermine Colorado’s local government structure. Without naming the Cotmty Assessor as a party, plaintiff seeks relief against the County because of the claimed discriminatory refusal by the County Assessor to hire him. (Majority Op. at 1164-1165.) Like the Sheriff, the Assessor is a constitutional officer whose position is established separately from the Board of County Commissioners. See Colo. Const, art. XIV, § 8 (election of assessors and other county officers). And like the Sheriff, Colorado law provides that the Assessor has the power to hire and fire his own employees. See Colo.Rev.Stat. § 30-2-104 (stating that the “county assessors ... may appoint such *1172 deputies, assistants, and employees as shall be necessary”). The Colorado Supreme Court has held that, under this statutory provision, county officers have the independent power to determine who should fill positions within their departments, and that the board of county commissioners may not interfere with those decisions. See Schroeder, 381 P.2d at 822-23 (interpreting a previous version of § 30-2-104 with identical relevant language, and holding that the county cannot effectively eliminate a position previously established by a county officer and approved by the board by refusing to fund the position). In suing the County over the Assessor’s decision not to hire plaintiff, plaintiff is, in essence, asking that the Board be held liable for a hiring decision— the decision by the County Assessor not to hire plaintiff — over which it had no power under Colorado law.
II
Principles of comity and federalism reinforce my analysis of this issue.
The above discussion of control over a sheriffs employees must be considered in the broader context of Colorado constitutional law. Division of authority over local government employees is part of a larger structure of county offices and county government that was established by the people of Colorado when they formed their constitution. See Colo. Const, art. XIV, §§ 6, 8.
Colorado courts have gone to great lengths to protect this constitutional scheme, and the state supreme court has repeatedly emphasized the independence of the various county constitutional offices both from other county officials and from the state legislature itself. For example, it has held unconstitutional state laws that attempted to place qualifications on holding the office of sheriff because the constitution explicitly lists the qualifications that must be met by elected sheriffs. Jackson v. Colorado, 966 P.2d 1046, 1051 (Colo.1998) (en banc). The Colorado Supreme Court has come to the same conclusion with respect to County Assessors. See Reale v. Bd. of Real Estate Appraisers, 880 P.2d 1205, 1211 (Colo.1994) (en banc) (“The Colorado Constitution reserves no authority in the state legislature to change, add to, or diminish the qualifications for constitutionally created offices.”).
Colorado county constitutional officers are officers with limited powers. For instance, officers such as sheriffs may not undertake actions that are not within their inherent or statutory authority. See, e.g., Douglass v. Kelton, 199 Colo. 446, 610 P.2d 1067, 1068 (Colo.1980) (en banc) (holding that sheriffs had no power to issue permits for concealed weapons, because such power was not granted to them by statute, nor was it part of the inherent authority of a sheriff); Skidmore v. O’Rourke, 152 Colo. 470, 383 P.2d 473, 476-77 (Colo.1963) (en banc) (holding for the same reasons that a county treasurer did not have the power to file suit to recover taxes owed).
A finding of fact by the jury that the County was plaintiffs employer would undermine the constitutional scheme for county offices created by the people of Colorado and protected by Colorado case law. A conclusion that Bristol, a member of the Sheriffs Department, is an employee of the County would make the County responsible for finding an alternate position for Sheriffs Department employees who have been fired by the Sheriff. Not only would this undermine the independence of the Sheriff, but it would also create a strong incentive for the County to interfere with the Sheriffs constitutionally and statutorily protected right to hire and fire employees, because the County would be liable for those decisions. Moreover, *1173 because a jury finding for plaintiff would, in the future, require the County to seek alternate positions for Sheriffs Department employees, the County might even be forced to exceed its statutory and constitutional powers in order to fulfill that requirement.
Likewise, a finding by a jury that the County was liable for the Assessor’s decision not to hire plaintiff would be contrary to Colorado law and would undermine Colorado’s constitutional scheme for local government. Such a finding would provide an incentive for the County to interfere in the decision of the Assessor and other county officers to hire and fire employees, contrary to the provisions of Colorado Revised Statutes § 30-2-104. In essence, the federal courts would be holding a Colorado governmental agency liable for failing to exceed its statutory authority under Colorado law. There must be few, if any, actions that we could take that would be more corrosive of the sovereignty of the State of Colorado and of our federal system of government.
These considerations buttress my conclusion that the County cannot be Bristol’s employer. As we have the ability, reasonably and plausibly, to apply a statute to avoid intrusion on state governmental functions we should do so. See Lyes v. City of Riviera Beach, 166 F.3d 1332, 1343-44 (11th Cir.1999) (holding that “federalism and comity concerns ... should play a significant role in determining whether to treat as one body two governmental entities that are separate and distinct under state law,” and that “substantial deference” should be accorded to “a state lawmaking body’s determination of whether two or more governmental entities are separate and distinct” for Title VII purposes); cf. Gregory v. Ashcroft, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (stating that where federal law is ambiguous it should be interpreted in a manner to avoid intrusion on state government functions). I would hold that, as a matter of law, the County is not an employer of Bristol, and that the County therefore had no obligation to accommodate Bristol.
This presents the basis of my dissent.

. While a board of county commissioners may have to approve the overall budget of a sheriff’s department and the salaries of the sheriff's employees, the Colorado Supreme Court *1170 has indicated that the sheriff is free to adjust the number or salary of his employees as long as he stays within the overall budget provided by the board. See Tihonovich v. Williams, 196 Colo. 144, 582 P.2d 1051, 1055-56 (Colo.1978) (en banc).

. Two federal district courts have held that sheriff's department employees are employees of the county. See Robertson v. Bd. of County Comm’rs, 985 F.Supp. 980, 985 (D.Colo.1997) (holding that sheriff's department employees are employees of the county for purposes of a Fair Labor Standards Act suit because of the board's approval of salaries and budget); Johnson v. Bd. of County Comm’rs, 859 F.Supp. 438, 442 (D.Colo.1994) (holding that a board is the plaintiff’s employer for purposes of Title VII). Both of these cases relied to a great extent on our decision in Owens v. Rush, 636 F.2d 283 (10th Cir.1980). See Robertson, 985 F.Supp. at 985; Johnson, 859 F.Supp. at 441. I agree with the discussion in the majority opinion that while Owens does control the fifteen-worker jurisdictional issue, it is not controlling on the issue of who has responsibility to provide accommodation to a worker. (Majority Op. at 1166 n. 7.) Moreover, both of these cases relied on the ability of a board of county commissioners to control the number and salary of a sheriff's employees through the budgetary process. See Robertson, 985 F.Supp. at 985; Johnson, 859 F.Supp. at 441. However, as pointed out in note 1, supra, the mere fact that the number or salary of employees can be controlled through the budgetary process does not mean that a board can also determine the hiring and firing of particular employees. And as the Colorado Supreme Court held in Schroeder, 381 P.2d at 822-23, a board of county commissioners (despite its budgetary authority) has no power to order the termination of a particular employee of a county officer.