FILED
**United States Court of Appeals
Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 2, 2021**

**Christopher M. Wolpert
Clerk of Court**

_____

RAFIK BENAISSA, M.D.,

      Plaintiff - Appellant/ Cross-
      Appellee,

v.

SALINA REGIONAL HEALTH
CENTER, INC.,

      Defendant - Appellee/ Cross-
      Appellant.

Nos. 20-3236 & 21-3015
(D.C. No. 5:19-CV-04080-HLT-ADM)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

The primary issue in these appeals is whether Rafik Benaissa, M.D., was an

employee of Salina Regional Health Center, Inc. (SRHC) within the meaning of

Title VII of the Civil Rights Act of 1964 and Kansas law.  The district court

concluded he was not and therefore granted summary judgment to SRHC on

Dr. Benaissa's Title VII and state-law claims.  Dr. Benaissa appeals that judgment,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

and SRHC cross-appeals the district court's denial of its motion for attorney's fees.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in each appeal.

## I.  BACKGROUND

Dr. Benaissa is an Arab Muslim male and a board-certified orthopedic

surgeon.  He performed physician services at SRHC from February 1, 2018 through

January 31, 2019.  SRHC obtained his services by contracting with one of its

third-party vendors, LocumTenens.com (LT).[1]  LT assigned Dr. Benaissa to SRHC

for orthopedic coverage while SRHC searched for a permanent surgeon.  In

December 2018, SRHC gave LT thirty days' written notice (as required by its

contract with LT) that it no longer wished to schedule Dr. Benaissa's services.

After Dr. Benaissa's relationship with SRHC ended, he filed a charge against

SRHC with the Equal Employment Opportunity Commission (EEOC) alleging

discrimination and retaliation.  The EEOC dismissed the charge for lack of

jurisdiction because there was "no employee/employer relationship."  Aplt. App.

at 77 (boldface omitted).

Dr. Benaissa then filed a civil action against SRHC seeking actual and punitive

damages.  He asserted Title VII claims of discrimination based on race, religion, and

national origin, and a claim of retaliation under Kansas law.  In his retaliation claim,

Dr. Benaissa alleged that members of SRHC's medical staff used a peer-review

---

[1] The term "locum tenens" is defined as "one filling an office for a time or temporarily taking the place of another—used especially of a doctor or clergyman." *Merriam-Webster.com Dictionary*, "locum tenens," https://www.merriam-webster.com/dictionary/locum%20tenens (last visited Nov. 15, 2021).

process to retaliate against him for referring patients to surgeons outside of SRHC and for expressing his concerns that SRHC was violating standards of care.  SRHC filed a motion for summary judgment, arguing all claims failed because SRHC was not Dr. Benaissa's employer.  The district court granted summary judgment to SRHC on all claims.

Having prevailed on the merits, SRHC sought attorney's fees under 42 U.S.C. § 2000e-5(k).  The district court denied SRCH's motion for attorney's fees.

## II.  DISCUSSION

### A.   Appeal No. 20-3236 (Merits)

#### 1.   Standard of review

We review de novo a district court's decision to grant summary judgment, applying the same standard as the district court.  *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1224 (10th Cir. 2014).  We view all facts and evidence in the light most favorable to the party opposing summary judgment, "resolv[ing] all factual disputes and reasonable inferences in [that party's] favor."  *Id.* (internal quotation marks omitted).  Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

#### 2.   Title VII claims

As relevant here, Title VII makes it unlawful for an "employer" to "discharge" or "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . .

3

religion, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees." *Id.* § 2000e(b). And an "employee" is defined as "an individual employed by an employer." *Id.* § 2000e(f). Thus, to make out a prima facie case of Title VII discrimination, "a plaintiff must first prove the defendant was [his] employer." *Knitter*, 758 F.3d at 1225. The failure to meet that burden means the "discrimination . . . claims necessarily fail." *Id.*

We review legal questions de novo, such as "the legal test to determine the definition of 'employee' under Title VII." *Id.* "Whether an entity actually satisfies this definition under the appropriate test, however, is a fact issue for the jury." *Id.* (internal quotation marks omitted). Nonetheless, the question may be resolved on summary judgment if, when viewing the facts in the light most favorable to the plaintiff, a court can say that no reasonable jury could find the plaintiff was the defendant's employee. *See id.* at 1228.

In assessing the Title VII claims, the district court applied a multi-factor "hybrid test" typically used in federal anti-discrimination cases to distinguish employees from independent contractors. *See Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996) (describing hybrid test). The hybrid test focuses on "the employer's right to control the means and manner of the worker's performance." *Id.* (internal quotation marks omitted). But the test also considers other factors, including:

4

> (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

*Id.* "No single factor is conclusive. Rather, the courts are to look at the totality of circumstances surrounding the working relationship between the parties." *Id.*

The district court first determined the following facts were "inconsistent with employee status," Aplt. App. at 178: Dr. Benaissa was a highly skilled, experienced, board-certified orthopedic surgeon who was licensed in eleven states. He "agree[d] that he had *complete autonomy* in determining what work needed to be done for his patients." *Id.* SRHC had written employment agreements with "*all* its employed physicians," but no "written employment agreement with" Dr. Benaissa; "the only written contract" was between SRHC and LT "for the provision of services by [LT's] independent contractors." *Id.* SRHC had contacted LT "about a short-term placement for an orthopedic surgeon," and Dr. Benaissa performed services at SRHC for one year before SRHC "terminate[d] its scheduled services with [him]." *Id.* LT paid him; SRHC did not. SRHC did not provide him with "any benefits . . . such as health and dental insurance, retirement benefits, or paid time off." *Id.* And both SRHC and Dr. Benaissa treated his "taxes as if [he] was an independent contractor." *Id.*

5

The district court further concluded that Dr. Benaissa's use of SRHC's "tools and premises for his work" was "not a reliable indicator of employee status in this case" because the "use of such items is inherent in the medical field," regardless of whether a doctor is a hospital employee "'or simply has privileges at the hospital.'" *Id.* at 179 (quoting *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 262 (4th Cir. 1997)). Equally unreliable as an indicator of employee status, the district court concluded, was the fact that Dr. Benaissa's work was part of SRHC's business, because the same would be true of both an employed physician and one "who simply has privileges at [SRHC]." *Id.* The district court also observed that although SRHC contacted LT about the coverage it needed and therefore controlled the number of hours Dr. Benaissa could work, Dr. Benaissa was free to turn down shifts. And although Dr. Benaissa worked exclusively for SRHC during the one-year period, there was no evidence he could not have worked elsewhere, and he "was licensed in several states and had privileges at other hospitals." *Id.* at 180.

The district court found Dr. Benaissa's additional arguments unpersuasive. His contentions that SRHC could assign additional work or that he was paid per shift or assignment lacked record support. The duration of Dr. Benaissa's time at SRHC (one year) was not "a particularly enduring relationship," and it was "undisputed that [SRHC] used a locum [tenens] provider while it searched for permanent coverage for the position." *Id.* That Dr. Benaissa could not hire or fire anyone suggested he was *not* an employee, as did the requirement that SRHC provide LT with thirty days' advance notice to terminate his services rather than being able to do so itself directly.

6

Dr. Benaissa contests several aspects of the district court's ruling. He first argues that instead of the hybrid test, the district court should have applied a sixteen-factor test set out in the EEOC's Compliance Manual, because the Supreme Court endorsed that test in *Clackamas v. Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 448-49 (2003). He asserts that five of the Compliance Manual's sixteen factors are not part of the hybrid test and "crucial" to his case, but he addresses only two of those five factors: "whether the work is performed on the employer's premises" and "whether the worker hires or pays assistants." Aplt. Opening Br. at 16.

The district court rejected Dr. Benaissa's suggestion to use the EEOC test because its factors were substantially similar to those of the hybrid test and this circuit has endorsed the hybrid test. We agree with the district court's decision. The Compliance Manual lists "16 factors—taken from [*Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992)]—that may be relevant to 'whether the employer controls the means and manner of the worker's work performance.'" *Clackamas*, 538 U.S. at 449 (quoting *EEOC Compliance Manual* (2000) § 605:0008 & n.71). *Darden* referred to this test as "a common-law test for determining who qualifies as an 'employee' under [the Employee Retirement Income Security Act]." 503 U.S. at 323.

Discussing *Darden* in the Title VII context, we have "agree[d] with the Second, Eighth, and Ninth Circuits that there 'is little discernible difference between the hybrid approach and the common law agency approach.'" *Lambertsen*, 79 F.3d

at 1028 (brackets omitted) (quoting *Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir. 1993)). In *Frankel*, the Second Circuit explained that both approaches emphasize "the hiring party's right to control the manner and means by which the work is accomplished" but also "consider a non-exhaustive list of factors as part of a flexible analysis of the 'totality of the circumstances,'" and "no one factor [is] decisive." 987 F.2d at 90 (internal quotation marks omitted); *accord Clackamas*, 538 U.S. at 448 (agreeing with the EEOC that "the common-law element of control is the principal guidepost" in "distinguishing between servants and independent contractors"). Although *Lambertsen* and *Frankel* predate *Clackamas*, we have continued to recognize the hybrid test post *Clackamas* in determining whether an individual is an employee or an independent contractor. *See, e.g.*, *Knitter*, 758 F.3d at 1226.[2] Indeed, Dr. Benaissa cites no case holding that *Clackamas*'s discussion of the EEOC Compliance Manual displaces the hybrid test, and we decline to conclude so today.

Alternatively, even if the district court should have used the sixteen factors listed in the EEOC Compliance Manual rather than the hybrid test's eleven factors, the court in fact addressed the two factors from the EEOC test that Dr. Benaissa focuses on here and explained why they did not support that he was SRHC's

---

[2] We did not recently recognize the applicability of *Clackamas* in *Bowles v. Grant Trucking, LLC*, 842 F. App'x 236 (10th Cir. 2021), as Dr. Benaissa contends. In *Bowles*, we determined that "[w]e *need not decide* whether and to what extent *Clackamas* applies to the facts of this case because it would not affect the ultimate determination of whether the [Americans with Disabilities Act] applies to [the employer]." *Id.* at 241-42 (emphasis added).

employee.  The first such factor is whether Dr. Benaissa performed the work on

SRHC's premises.  But this factor *is* part of the hybrid test.  *See Lambertsen*, 79 F.3d

at 1028 (listing "whether the employer or the employee furnishes the . . . place of

work" as the third factor in the hybrid test).  We agree with the district court's

conclusion that use of hospital premises "is inherent in the medical field" and

therefore "not a reliable indicator of employee status in this case."  Aplt. App. at 179

(citing, inter alia, *Tsosie v. United States*, 452 F.3d 1161, 1164 (10th Cir. 2006),

where this court explained that use of a hospital's physical facilities "favors

'employee' status" under the test used to evaluate Federal Tort Claims Act claims,

"but *unremarkably* so," because whether serving "either as an independent contractor

or a full-fledged employee . . . it is expected that [a physician] will make full use of

the hospital's physical facilities during the course of [the physician's] service")

(emphasis added)).

The other EEOC-test factor Dr. Benaissa addresses, whether the worker hires

or pays assistants, is not among the hybrid test's factors, but the district court

concluded Dr. Benaissa's inability to hire or pay assistants "seems [to] support[] a

determination that [he] was *not* an employee," *id.* at 180 (emphasis added).

Dr. Benaissa offers no argument regarding the district court's conclusion, and we see

no reason to disturb it.

Relatedly, Dr. Benaissa contends the EEOC Compliance Manual recognizes

that a worker may be an employee of two different employers, which he claims is

important because he was paid by a third party, LT.  But in the district court, he

merely mentioned this possible "joint employer" or "single employer" theory without developing any argument.[3]  And he has not argued for plain-error review in this court.  Therefore, he has waived any "joint employer" or "single employer" theory. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."); *Harrell v. United States*, 443 F.3d 1231, 1233 (10th Cir. 2006) (concluding that argument undeveloped in district court was not preserved for appeal).

Dr. Benaissa next argues the district court placed too much weight on the fact that he is an orthopedic surgeon.  We disagree.  One of the hybrid test's factors is "the skill required in the particular occupation." *Lambertsen*, 79 F.3d at 1028.  The district court properly considered that Dr. Benaissa is an "orthopedic surgeon, which is a highly skilled occupation that is performed by specialists." Aplt. App. at 177-78.  But the court also concluded the "most important[]" factor was Dr. Benaissa's undisputed "*complete autonomy* in determining treatment decisions for his patients." *Id.* at 181.  Thus, the court did not place undue weight on Dr. Benaissa's occupation but properly considered it as one of many factors that inform the hybrid test's

---

[3] "Under the joint employer test, two entities are considered joint employers if they share or co-determine those matters governing the essential terms and conditions of employment." *Knitter*, 758 F.3d at 1226 (internal quotation marks omitted).  "[T]he single employer test permits a plaintiff who is the employee of one entity to hold another entity liable by arguing that the two entities effectively constitute a single employer." *Id.* (internal quotation marks and ellipsis omitted).  The focus and supporting factors for each of these tests differs from those used in the hybrid test. *See id.* at 1226-27 (describing and distinguishing the three tests).

primary concern with "the employer's right to control the means and manner of the worker's performance," *Lambertsen*, 79 F.3d at 1028 (internal quotation marks omitted).

Dr. Benaissa claims the district court erred in determining his "relationship with [LT] precluded him from being an employee of SRHC." Aplt. Opening Br. at 17. He points out that according to the EEOC Compliance Manual, just because "a worker is paid by a temporary agency or similar entity does not preclude him from being an employee of the entity for whom he is actually performing work." *Id.* To the extent this suggests LT and SRHC were joint employers, this argument is waived for reasons explained above. To the extent it suggests the district court misunderstood the role that third-party payment plays in a hybrid-test analysis, the argument fails. The district court did not conclude that the fact LT paid Dr. Benaissa precluded employee status; the court instead considered that fact among others that were "inconsistent with employee status": SRHC provided him no benefits, and both parties treated Dr. Benaissa's taxes as if he "was an independent contractor"—SRHC "did not withhold any [employment] taxes," Dr. Benaissa "attested in his tax returns that his income derived from his *sole proprietorship*," Aplt. App. at 178, and he "claimed $224,727.00 in business-related expenses for his sole proprietorship during the year he provide services for [SRHC]," *id.* at 175. That was proper.[4]

---

[4] To the extent Dr. Benaissa relies on *Jaffrey v. PorterCare Adventist Health System*, No. 15-cv-02297-NYW, 2017 WL 1230469 (D. Colo. Apr. 4, 2017) (unpublished), as an example of a discrimination case involving a locum tenens physician, we note that whether Dr. Jaffrey was an employee under any multifactor

Dr. Benaissa argues that SRHC's conversion of his hospital privileges from locum tenens privileges "to permanent status" weighs in favor of concluding he was SRHC's employee. Aplt. Opening Br. at 18.[5] The district court acknowledged this change in privileges, *see* Aplt. App. at 174-75, but it did not expressly consider the change when applying the hybrid test. The court did, however, cite cases concluding that a physician was not a hospital employee despite having hospital practice privileges. *See id.* at 181 (citing, inter alia, *Levitin v. Nw. Cmty. Hosp.*, 923 F.3d 499, 501 (7th Cir. 2019) ("[A] physician with hospital practice privileges is not the hospital's employee merely because he is subject to peer review."), and *Cilecek*, 115 F.3d at 262 (concluding that shared control of responsibility for maintaining standards of patient care, keeping proper records, and following established procedure "exists both for employee doctors and for doctors merely enjoying practice privileges at a facility")); *see also McPherson v. HCA-Healthone, LLC*, 202 F. Supp. 2d 1156, 1166 (D. Colo. 2002) ("Doctors enter into agreements for staff privileges not to become employees of the hospital, but because they need places to perform surgeries.").

---

test was not an issue discussed in that case. *Jaffrey*, therefore, does not aid in our analysis here.

[5] SRHC's Bylaws provide that a physician may have locum tenens privileges for only 120 days. *See* Aplt. App. at 121. As the expiration of that period drew near for Dr. Benaissa, he asked SRHC for "Associate Staff status." *Id.* at 123. SRHC granted his request, granting him "membership on the Associate Medical Staff" and privileges in Orthopedic Surgery, Department of Surgery." *Id.* at 124.

12

*Levitin* did leave open the possibility that in some circumstances, having "hospital staff privileges" could create "an indirect employer-employee relationship with the hospital sufficient to invoke Title VII protection." *Levitin*, 923 F.3d at 501 (internal quotation marks omitted); *see also McPherson*, 202 F. Supp. 2d at 1167 ("[T]he privilege to use facilities, equipment and staff, *without more*, does not translate into an employer-employee relationship." (emphasis added)). And although Dr. Benaissa cites several other cases suggesting the same possibility, he does not address *Levitin* (or *Cilecek*) or otherwise explain why the circumstances of his case warrant deviating from the principle that having staff privileges at a hospital is not sufficient to confer employee status on a physician. And given that the other factors either support the conclusion that he was not an SRHC employee or are unreliable indicators of employee status, we do not see how the circumstances of this case warrant such a deviation.

Finally, Dr. Benaissa has not taken issue with many of the individual factors the district court determined were inconsistent with employee status or with other caselaw the court relied on elsewhere in its decision when analyzing the hybrid test's various factors. In particular, he has not meaningfully challenged the court's assessment of the hybrid test's main focus—that SRHC did not "control the means and manner of [his] performance," *Lambertsen*, 79 F.3d at 1028. Therefore, considering the totality of the circumstances in light of the applicable law, we conclude that, as a matter of law, Dr. Benaissa was not SRHC's employee within the

meaning of Title VII.  Accordingly, we affirm the grant of summary judgment to

SRHC on the Title VII claims.

3.      **State-law retaliation claim**

As pleaded in his complaint, Dr. Benaissa's state-law retaliation claim rested

solely on allegations that "members of SRHC's medical staff used the peer review

process to retaliate against [him] due to his referrals of patients to Mowery Clinic

surgeons or for expressing concerns that the hospital was in violation of applicable

standards." Aplt. App. at 14.  But in its ruling on summary judgment, the district

court also considered the claim as involving retaliatory discharge.[6]  We therefore

consider both theories, beginning with retaliatory discharge.

The district court granted summary judgment to SRHC on Dr. Benaissa's

claim of retaliatory discharge under Kansas law because Dr. Benaissa was not

SRHC's employee.  The court explained that under Kansas law, a retaliatory

discharge claim is an exception to the employment-at-will doctrine and therefore is

confined to the employee-employer relationship.  *See, e.g.*, *Goodman v. Wesley Med.*

*Ctr., L.L.C.*, 78 P.3d 817, 821 (Kan. 2003) ("Kansas follows the common-law

employment-at-will doctrine, which allows employers to terminate employees for

good cause, for no cause, or even for the wrong cause.  To prevail on a retaliatory

discharge claim, an employee must demonstrate that he or she falls within one of the

---

[6] The retaliatory discharge claim appears to have been raised in Dr. Benaissa's response to SRHC's motion for summary judgment.  *See* Aplt. App. at 93-94 (response); *see also id.* at 35 (SRHC summary judgment brief treating the state-law claim as one solely for retaliatory discharge).

14

exceptions to the employment-at-will doctrine."); *Zinn v. McKune*, 143 F.3d 1353, 1360 (10th Cir. 1998) (affirming summary judgment on claim of whistleblower retaliatory discharge under Kansas law because, among other reasons, defendant was not plaintiff's employer).  To determine whether Dr. Benaissa qualified as an employee for the purposes of his retaliatory discharge claim under Kansas law, the district court again applied the hybrid test.  The court reasoned that the analysis under both tests is effectively the same because the Kansas test focuses on the same issues as the hybrid test, and therefore summary judgment on Dr. Benaissa's state claim was warranted for the same reasons as on his Title VII claim.

Dr. Benaissa argues the district court erred because he was SRHC's employee under a twenty-factor test Kansas courts use to determine whether an individual is an employee or an independent contractor.  *See Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 76 (Kan. 2014) (per curiam) (setting forth test for such use in evaluating claims under the Kansas Wage Payment Act).  Dr. Benaissa asserts that the analysis under the Kansas test "essentially parallel[s] the analysis . . . under the Federal test," and submits that the same arguments he advanced on his Title VII claim are sufficient to avoid summary judgment on the employee requirement of his retaliatory discharge claim.  Aplt. Opening Br. at 22.[7]  By "Federal test,"

---

[7] The primary focus of the Kansas test set forth in *Craig* is, like the hybrid test, the employer's right to control the employee's work.  *See Craig*, 335 P.3d at 76.  And many of the nineteen additional factors the Kansas test includes are the same as those of the EEOC and hybrid tests, except for the following seven factors, which are exclusive to the Kansas test:  "the requirement that the services be provided personally by the worker"; "the requirement that the worker devote full-time to the

Dr. Benaissa apparently means the EEOC test he advocates. However, we have concluded that the hybrid test applies instead to the Title VII claims. With regard to the one factor exclusive to the EEOC test (whether the worker hires or pays assistants) that Dr. Benaissa asserts is crucial to his Title VII claim, the district court properly ruled that his inability to hire or pay assistants indicated he was not an SRHC employee. Therefore, because Dr. Benaissa has not succeeded on appeal with respect to whether he was SRHC's employee for purposes of his Title VII claim, he cannot prevail on that issue as to his retaliatory discharge claim under Kansas law. We therefore affirm summary judgment on the retaliatory discharge claim. *See Nash v. Blatchford*, 435 P.3d 562, 569 (Kan. Ct. App. 2019) ("Where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor." (internal quotation marks omitted)).

The district court also considered and rejected Dr. Benaissa's argument that his claim of bad-faith peer review under Kan. Stat. Ann. § 65-442(a) requires no employer-employee relationship. The district court explained that his statutory claim remained a retaliation claim, and under Kansas law, such claims may only be brought

---

employer's business"; "the requirement that the worker submit regular or written reports to the employer"; "the extent to which the employer pays the worker's business or travel expenses"; "the ability of the worker to make a profit or suffer a loss"; "whether the worker can work for more than one firm at a time"; and "whether the worker makes his or her services available to the general public on a regular and consistent basis." *Id.* Dr. Benaissa has not relied on any of the seven factors exclusive to the Kansas test.

by employees.  The court noted that § 65-442(a) and another statute Dr. Benaissa

relied on in his response to SRHC's summary judgment motion, Kan. Stat. Ann.

§ 65-4909, merely limit liability for medical care facilities and certain of their

officials if they acted in good faith.

On appeal, Dr. Benaissa reprises his argument that his statutory claim based on

allegedly retaliatory peer review does not require an employee-employer relationship.

But even if § 65-442(a) is not limited to employers, as Dr. Benaissa contends, he still

has not identified the source of his claim.  Section 65-442(a) "grants immunity in

peer review processes in an effort to encourage hospitals to actively engage in peer

review of staff physicians" and "was enacted under the belief that with the threat of

liability removed, the effective use of peer review would increase and be promoted."

*Davis v. Hildyard*, 113 P.3d 827, 830 (Kan. Ct. App. 2005) (internal quotation marks

omitted).[8]  To the extent Dr. Benaissa suggests § 65-442(a) creates an implied cause

of action for retaliatory peer review, he cites no case for that proposition, nor have

---

[8] Section 65-442(a) provides:

There shall be no liability on the part of, and no action for damages shall arise against, any duly appointed member of the governing board or the duly appointed member of a committee of the medical staff of a licensed medical care facility for any act, statement or proceeding undertaken or performed within the scope of the functions and within the course of the performance of the duties of such committee of the medical staff if such member acted in good faith and without malice, and the medical staff operates pursuant to written bylaws that have been approved by the governing board of the medical care facility.

we uncovered any.  The same is true of the other statute he relies on, § 65-4909(a).[9]

We decline to recognize such an implied cause of action based on Dr. Benaissa's

limited argument.  We therefore affirm the district court's grant of summary

judgment on Dr. Benaissa's claim of retaliatory peer review.

**B.    Cross-appeal No. 21-3105 (Attorney's Fees)**

In its cross-appeal, SRHC challenges the district court's denial of its motion

for attorney's fees under 42 U.S.C. § 2000e-5(k), which gives courts discretion to

award a reasonable attorney's fee to the prevailing party in a Title VII action.

Where, as here, the defendant is the prevailing party, a court may not award

attorney's fees "unless the court finds that the plaintiff's claim was frivolous,

---

[9] Like § 65-442(a), § 65-4909(a) protects "good faith participation in the peer review process."  *Donnell v. HCA Health Servs. of Kan., Inc.*, 28 P.3d 420, 425 (Kan. Ct. App. 2004).  Section 65-4909(a) provides:

> There shall be no liability on the part of and no action for damages shall arise against any:  (1) State, regional or local association of health care providers; (2) state, regional or local association of licensed adult care home administrators; (3) organization delegated review functions by law, and the individual members of any committee thereof (whether or not such individual members are health care providers or licensed adult care home administrators); or (4) individual or entity acting at the request of any committee, association or organization listed in subsections (1) through (3), which in good faith investigates or communicates information regarding the quality, quantity or cost of care being given patients by health care providers or being furnished residents of adult care homes for any act, statement or proceeding undertaken or performed within the scope of the functions and within the course of the performance of the duties of any such association, organization or committee if such association, organization or committee or such individual member thereof acted in good faith and without malice.

18

unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 807 (10th Cir. 2007) (internal quotation marks omitted).  We review a district court's award of attorney's fees under § 2000e-5(k) for an abuse of discretion.  *Id.*

In denying SRHC's motion, the district court expressed concerns about several aspects of Dr. Benaissa's case.  Dr. Benaissa knew most of the facts he relied on before he filed suit, including that SRHC never paid him.  The facts he relied on were likely the same for any physician with staff privileges at a hospital.  And he cited no case holding that a locum tenens provider was a hospital employee for Title VII purposes.  The court also had concerns about the inconsistency between his tax returns, where he attested to being a sole proprietor, and his litigation position that he was an SRHC employee.

Although the court considered the issue "close[]," Aplee. Suppl. App., Vol. I at 39, the court found other factors counseled against granting attorney's fees. Dr. Benaissa had identified some facts supporting his position under the hybrid test, and although the court had found his arguments unpersuasive, SRHC had not identified any Tenth Circuit authority foreclosing Dr. Benaissa's position on a similar record.  The court also found it significant that Dr. Benaissa had agreed at the outset of the case to limit discovery to the threshold, potentially dispositive, issue—whether SRHC was his employer.

On appeal, SRHC argues the district court placed too much importance on Dr. Benaissa's agreement to limit discovery because Dr. Benaissa learned nothing

new as a result of that discovery. It also posits that the evidence overwhelmingly demonstrates that SRHC was not his employer. We cannot say the district court "(1) fail[ed] to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commit[ted] an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relie[d] on clearly erroneous factual findings." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) (defining abuse of discretion).[10] We therefore affirm the order denying SRHC's motion for attorney's fees.

### III.  CONCLUSION

We affirm the district court's judgment and its order denying SRHC's motion for attorney's fees.

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[10] Our conclusion does not require us to address the parties' arguments regarding whether (1) Dr. Benaissa brought the action in good faith or (2) his litigation position is factually supported by either *Nash*, 435 P.3d at 569, or a letter from the Kansas Board of Healing Arts informing him it was closing its investigation into an outside reviewer's report that treatment he provided did not meet the standard of care.

20